**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LINDA C. CHRISTOPHER ,**

    **Plaintiff,**

**-vs-**              **Case No. 6:05-cv-1797-Orl-31KRS**

**GANNETT SATELLITE INFORMATION**
**NETWORK, INC.,**

    **Defendant.**

_____

# ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 21) and Plaintiff's Response thereto (Doc. 24).

**I. Background**

The relevant facts, taken in the light most favorable to the non-moving party, are as follows:

Plaintiff, Linda Christopher ("Christopher"), was hired by Defendant Gannett Satellite Information Network, Inc. ("Gannett"), on August 9, 1982, to work for the national newspaper "USA Today". In 1989, she was promoted to Controller for USA Today's North/Central Florida Market, headquartered in Orlando, FL, and in 2003 she was again promoted to Senior Controller for the Orlando market. Christopher's direct supervisor from 1992 through 2005 was Fran Cianciola ("Cianciola"), the General Manager in Orlando, who in turn reported to the Circulation Vice President, Doris Kasold ("Kasold").

In early November 2004, Plaintiff drafted her annual Self Review and presented it to Cianciola. The Self Review contained a request that Christopher's salary be increased so that it was equal with two of her male peers, William McKay ("McKay") and Paul Miller. Cianciola told Christopher that she should not include such a request in her Self Review. Kasold told Christopher that she would look into the salary issue.

On December 7, 2004 Plaintiff received her annual performance review from Cianciola. This review rated Plaintiff's performance as "Fully Meets Position Requirements", which was a lower rating than the previous 4 years when she received a rating of "Exceeds Position Requirements".The performance report indicates that Christopher had "unacceptable accounts receivable percentages". (Doc. 21 at 6).

On December 30, 2004, Plaintiff walked past Cianciola's office and noticed that a meeting was being held amongst Cianciola, McKay and Assistant Controller Michael Spaulding. Christopher asked if she could join the meeting and was permitted to do so. The meeting was very tense and ended soon after Plaintiff had entered the room. McKay and Spaulding left the office and Plaintiff and Cianciola remained. Plaintiff then said to Cianciola "It's a good thing my medication can only cause suicidal tendencies and not homicidal ones." Plaintiff left Cianciola's office without any further comment. Cianciola interpreted Plaintiff's remark as a threat against her.

Cianciola discussed the remark with Kasold and Roselyn Jacobs in Human Resources, and the three decided that Plaintiff should be suspended. On January 7, 2005, Christopher met with McKay and Cianciola. Cianciola told Christopher that she was being suspended with pay pending an investigation into her actions. While Plaintiff was on suspension, Cianciola discovered expired and active company credit cards on Plaintiff's desk which had not been distributed or secured, as

well as a check from Walgreens to Defendant dated 2001 which had not been applied to their account, confidential employee information, budget payroll sheets and time sensitive paperwork that had not been filed. On January 27, 2005, Cianciola sent Plaintiff a memo addressing these issues and discussing Plaintiff's suspension for violating company policy.

On March 21, 2005, Plaintiff returned to work only to be informed by Kasold that she was being terminated.[1] On May 9, 2005 Michael Spaulding was promoted from Assistant Controller to Controller, taking over Plaintiff's position.[2]

Plaintiff brings this action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Age Discrimination and Employment Act of 1967, as amended, 28 U.S.C. § 621 *et seq*. (the "ADEA").

**II. Standard of Review**

A party is entitled to summary judgement when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

---

[1] Christopher was 57 years of age at this time.

[2] Spaulding was approximately 48 years of age at this time.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**

   *A) Count II: Retaliation[3]*

In order to maintain a claim for retaliation under Title VII, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004).

Here, Plaintiff alleges that the protected activity she engaged in was "requesting to the Circulation Vice President for Plaintiff's salary to be brought equal with males holding controller and senior controller positions . . ." (Doc. 1 at 4). Plaintiff alleges that her suspension and termination were the result of retaliation for this protected activity.

Defendant does not dispute that Plaintiff has established the first two elements of this claim. However, Defendant argues that Plaintiff cannot establish any causal connection between the protected activity and the adverse employment actions because they are too remote in time. (Doc. 21 at 23). Plaintiff complained about the salary disparity in November 2004, was suspended two months later, and was terminated two months after that, in March 2005. (Doc. 21 at 23-4). Defendant cites *Higdon v. Jackson*, 393 F.3d 1211 (11th Cir. 2004) for the proposition that Plaintiff must show close temporal proximity to establish a prima facie case of retaliation. However, Defendant mischaracterizes the holding of *Higdon*, which was recently explained by the Eleventh Circuit:

---

   [3]Plaintiff's original complaint contained four counts, however, Plaintiff voluntarily dismissed Counts I and IV. Therefore, only Counts II and III are addressed herein.

> [W]e have stated where there is actual and direct evidence of the decision-maker's awareness [of the protected activity], there is no need to rely upon circumstantial evidence, such as temporal proximity; indeed, the language from *Higdon* on which the district court relied stated that "in the absence of other evidence tending to show causation" a party might establish causation by showing a temporal proximity between the protected activity and the adverse action.

*Gary v. Hale*, 212 Fed. Appx. 952, 958 (11th Cir. 2007)

Here, it is undisputed that Defendant was aware of Plaintiff's complaints at the time she was suspended and terminated. Furthermore, the adverse employment actions were taken only 2 to 4 months following the protected activity, which, on these facts, is sufficient to establish a *prima facie* case for retaliation.

Establishment of a *prima facie* case of discrimination creates a rebuttable presumption of discrimination in favor of the Plaintiff.  The burden of production then shifts to Defendant "to articulate some legitimate nondiscriminatory reason" for its actions. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). Once Defendant has offered a nondiscriminatory explanation for its decision, the presumption of illegal discrimination is destroyed.  The burden then falls on the Plaintiff to show that the employer's explanations are merely pretextual.  *See McDonnell Douglas Corp v. Green,* 411 U.S. 792, 804 (1973).

> [O]nce the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

*Combs v. Plantation Patterns, Meadowcraft, Inc.,* 106 F.3d 1519, 1538 (11th Cir. 1997)

Defendant argues that Plaintiff has failed to show that its reasons for suspending and terminating her are mere pretext. Defendant states that Plaintiff was suspended and terminated

because of the threatening remark she made to Cianciola.[4] However, Plaintiff argues that Defendant did not believe, in good faith, that the threat was anything more than a sarcastic comment. First, the comment could be viewed as more of a threat to herself than to Cianciola, because she stated that she has "suicidal tendencies, not homicidal ones." Second, Plaintiff argues that if her employer truly believed she was dangerous, she would not have been permitted to return to work for a full week after making the comment. And finally, Plaintiff argues that Defendant did not conduct an investigation during her suspension because she was never interviewed about the incident. On these facts, a reasonable jury could find that Defendant's proffered explanation is mere pretext, and summary judgment is not appropriate

   *B) Count III: Age Discrimination*

To establish a *prima facie* case of employment discrimination based on age, the Plaintiff must show: (1) that she is a member of a protected class, (2) that she is entitled to or qualified for the position, (3) that she suffered an adverse employment action, and (4) that she was treated less favorably than similarly situated employees who are younger than her. *Hanley v. Sports Authority,* 143 F.Supp.2d 1351, 1355-6 (S.D. Fla. 2000) (citing *Holifield v. Reno,* 115 F.3d 1555 (11th Cir. 1997)); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996).

---

[4]Despite the many criticisms Defendant makes in its Motion of Plaintiff's qualifications and job performance, Defendant makes it clear that "the primary reason for Plaintiff's termination was the threat she made to her supervisor." (Doc. 21 at 21). In Defendant's statement of facts it is admitted that "Kasold made the decision to terminate Plaintiff's employment because of her threat to an employee of the company." (Doc. 21 at 10).

With regard to Plaintiff's claim that her termination was the result of age discrimination,[5] Defendant does not challenge Plaintiff's *prima facie* case of age discrimination, and instead merely argues that Plaintiff cannot prove the Defendant's proffered reasons for terminating Plaintiff are pre-textual. As discussed above, determining whether Defendant's proffered explanations are pre-textual requires resolution of disputed factual issues and therefore precludes summary judgment.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 21) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 5, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5]Plaintiff alleges that the age discrimination in this case was prompted by an inquiry she made in June 2004 regarding her retirement benefits. (Doc. 24 at 14).